## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MICHELLE VALENTINE,                )
                                   )
                Plaintiff,          )
                                   )
        v.                          )          1:09CV880
                                   )
POSTMASTER GENERAL                  )
JOHN E. POTTER,                     )
                                   )
                Defendant.          )

### MEMORANDUM OPINION AND ORDER

The instant matter comes before the Court on Defendant's Motion to Dismiss or, in the Alternative, for a More Definite Statement (Docket Entry 24) and Plaintiff's Motion to Appoint Counsel (Docket Entry 30). (See Docket Entries dated July 15 and 16, 2010.)[1] For the reasons that follow, the Court will grant Defendant's instant Motion and will deny Plaintiff's instant Motion.

### I. Background

Plaintiff's Complaint, filed pro se, states in its entirety:

Pursuant to Title VII 42 USC 12112 as amended. It's unlawful to retaliate Against an employee for opposing discriminatory employment practice for filing a charge of employment discrimination.

Pursuant to Section 501 of the Rehabilitation Act of 1973 as amendid [sic] 29 USC 791, Which prohibits employment discrimination on the bases of disability, ect [sic].........

_____

[1]    The Parties have consented to disposition of this case by a United States Magistrate Judge. (Docket Entry 31.)

Title 1 of ADA Prohibits employer to ask employee of any
past pre existing condition or Disability.

Grounds for admission: Evidence obtained wrongfully by
search of agency.
Conflict of Interest by two Agencys [sic], EEOC and
U.S.P.S
Retaliation Evidence, Prohibits discrimination on
employee disability.
Physical Assault by Supervisor.
Witness Statements by Employees. and Managers and
Supervisor.
U.S.P.S, Federal Employee Compensation Act. ( To All
Employees)
U.S.P.S Medical Questionnaire Upon Hiring.
Statutes 42 USC Section 1983, Authorizes lawsuits against
any person for the deprivation of rights, and privileges.

(Docket Entry 1 at 1 (errant capitalization and punctuation in
original).)[2] Plaintiff attached an exhibit to the Complaint that
includes portions of various documents, mostly apparently connected
to a complaint Plaintiff submitted to the equal employment
opportunity office of the United States Postal Service ("USPS") and
a subsequent appeal to the Equal Employment Opportunity Commission
("EEOC"). (See Docket Entry 1-2.)

Based on those documents, the Court infers that Plaintiff was
an employee of USPS until the termination of her employment on
January 3, 2007 (see id. at 36), which followed her placement "in
an off-duty, non-pay status" because she "failed to disclose

[2]     Plaintiff originally filed her Complaint with the United
States District Court for the District of Columbia. (See Docket
Entry 1 at 1.) That court ordered the case transferred to this
Court "[b]ecause the wrongdoing is alleged to have occurred in
Greensboro, [North Carolina,] which is where the relevant
employment records are likely to be located . . . ." (Docket Entry
14 at 1-2.)

numerous prior injuries and/or pre-existing conditions on [her] application for employment" (id. at 35).

Those documents further reflect that, in March 2006, while employed by USPS, Plaintiff was diagnosed with carpal tunnel syndrome in her right wrist. (Id. at 10.) They similarly show that, in August 2006, Plaintiff claimed a recurrence of the injury (id. at 22) and a doctor allegedly recommended that she only work four hours per day (id. at 12). On September 17, 2006, the documents indicate that Plaintiff requested leave to go home because her arm was hurting, which request management denied. (Id. at 9.) According to the documents, several days later, Plaintiff requested that a union representative file an EEOC complaint, presumably with respect to the events of September 17, 2006 (id. at 6, 20), and a USPS supervisor became angry (id. at 6). The documents also assert that, on October 12, 2006, as Plaintiff prepared to leave for the day, a supervisor told her to leave and pushed her towards the door. (Id. at 12; see also id. at 13-19.)

A document in Plaintiff's exhibit further reflects that "a rumor had surfaced that [Plaintiff] claimed the same injury [carpal tunnel] with a previous employer" and USPS initiated an investigation into whether Plaintiff "had a preexisting condition and if she disclosed it" as part of her application for employment with USPS. (Id. at 22.) A document titled "MEDICAL HISTORY QUESTIONNAIRE" (id. at 23) lists as question number thirty-six "Do

3

you have carpal tunnel syndrome or pain in your wrist or hands?"
(id. at 25). A handwritten note on the first page of the form,
apparently representing Plaintiff's global objection to questions
concerning her medical history, reads "Title 1 of ADA Prohibits."
(Id. at 23.)

Finally, a notice apparently concerning Plaintiff's formal
equal employment opportunity complaint with USPS states:

> [Plaintiff] alleged that [she] [was] discriminated
> against based on Race (Hispanic), Color (Hispanic), Sex
> (Female), Physical Disability (workers compensation) and
> Retaliation (prior EEO Activity) when: (1) on or about
> May 6, 2006, [Plaintiff's] request for leave on May 19,
> 20, and 21, 2006 was disapproved, (2) on or about
> September 29, 2006, [Plaintiff] [was] harassed for
> calling the police regarding an incident between
> [herself] and another employee, and (3) in that
> [Plaintiff] [was] harassed and physically threatened
> when: on October 12, 2006, [she] [was] forced off the
> Greensboro BMC property.

(Id. at 34.) It further indicates that USPS accepted the complaint
for investigation as to the allegation of discrimination with
respect to the third incident (i.e., the confrontation of October
12, 2006). (Id.) Plaintiff's documents only contain what appears
to be page two of the Notice of Final Action concerning that
investigation, which notifies Plaintiff of her right to file a
civil action. (Id. at 4.) The documents also include a letter
from the EEOC dated December 5, 2007, acknowledging receipt of an
appeal, presumably of USPS's final action. (Id. at 2.)

In sum, based on the attached exhibits, it appears the
Complaint - if viewed through the forgiving lens of liberal

4

construction provided to pro se litigants, see Erickson v. Pardus, 551 U.S. 89, 94 (2007) (reiterating that "document filed pro se is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers" (internal citation and quotation marks omitted)) – alleges that Defendant terminated Plaintiff's employment because of her race, color, gender, or disability, and/or in retaliation for filing, or attempting to file, a complaint with the EEOC, in violation of Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act ("ADA"), and/or the Rehabilitation Act. Defendant filed the instant Motion to Dismiss (Docket Entry 24), to which Plaintiff did not respond (see Docket Entries dated May 14, 2010, to present). Shortly after the time for her response lapsed, Plaintiff filed the instant Motion to Appoint Counsel. (Docket Entry 30.)[3]

## II. Discussion

Under this Court's Local Rules, failure to respond to a motion generally warrants granting the relief requested. See M.D.N.C. LR7.3(k) ("If a respondent fails to file a response within the time required by this rule, the motion will be considered and decided as an uncontested motion, and ordinarily will be granted without

---

[3]     Plaintiff requested an extension of time to file a response to Defendant's instant Motion (Docket Entry 27), which the Court granted (Docket Entry 28). Plaintiff filed her instant Motion outside the extended time frame granted by the Court. (See Docket Entry 30.)

further notice."). After due consideration, the Court finds no reason to depart from that standard with respect to Defendant's instant Motion. Because Plaintiff arguably asserts explanations for her failure to respond in her Motion to Appoint Counsel (Docket Entry 30), the Court will address that Motion first.

### A. Motion to Appoint Counsel

After the time allotted for Plaintiff to respond to Defendant's Motion to Dismiss, Plaintiff filed the instant Motion requesting appointment of counsel. (Docket Entry 30.) The instant Motion explains that Plaintiff "filed a Motion for Extension of Time [to respond to Defendant's Motion to Dismiss] on June 3rd 2010[] in response to providing a [sic] opposition to [Defendant's instant Motion]. Plaintiff had tried to provide the District Court of NC, with the opposition statement but was unsuccessful, due to disability carpel [sic] tunnel 354.0, in right hand which continues to have pain and discomfort." (Id. at 1 (errant punctuation in original).)[4]

In support, the instant Motion offers the following "evidence":

> (1) Which at this present time Plaintiff is not financialy [sic] stableto [sic] retain an attorney at this present time. Due to current hardship. (Evidence

---

[4]    The argument section of Plaintiff's Motion appears entirely in capitalized letters. (See Docket Entry 30 at 1-2.) For ease of reading, when quoting such parts of the Motion, this Memorandum Opinion employs standard capitalization conventions.

6

attached) provides Plaintiff only receives $113 dollars a month by social service.

(2) Counsel of record John Brubaker, Clerk (evidence attached) provides, based on the complexity of legal proceeding. It's suggested that you retain your own attorney to assist you in preparing a response and in pursuing this action.

(3) Plaintiff has tried to secure counsel, but based on this being a federal case, attorney are [sic] requiring a retainers [sic] fee which at the present time I'm unable to afford. Base [sic] on no income.

(4) (Affidavit evidence attached) of having a medical disability condition 354.0 carpel [sic] tunnel syndrome in the right and left hand. Also Doctors [sic] Glushakow ordered (attached doc) states no use of right hand wrist, continue to present date.

(5) Plaintiff will not be able to present case adequately without aid of counsel, based on (1)(2)(3)(4)(5).

(Id. at 1-2.) Plaintiff attached several documents to her Motion, including: (1) an Order from the United States District Court for the District of Columbia denying her motion for appointment of counsel before that court (id. at 4-5); (2) a document titled "Application for Leave to Proceed In Forma Pauperis and Affidavit/Declaration in Support" (id. at 6-9); (3) what appears to be the second page of a notice the Court provided Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) (id. at 10; see also Docket Entry 26 at 2); (4) a document showing Plaintiff's Temporary Assistance for Needy Families ("TANF") grant (Docket Entry 30 at 11); and (5) a portion of an Examination Report by Dr. Allen Glushakow, MDPA, on December 8, 2009 (id. at 12-13).

7

Title VII states, in relevant part, that, "[u]pon application by [a plaintiff who has brought a discrimination or retaliation claim under Title VII] and <u>in such circumstances as the court may deem just</u>, the court <u>may</u> appoint an attorney for such [plaintiff] . . . ." 42 U.S.C. § 2000e-5(f)(1) (emphasis added). Moreover, Subchapter I of the ADA specifies that "[t]he powers, remedies, and procedures set forth in [S]ection[] . . . 2000e-5 . . . of [Title 42] shall be the powers, remedies, and procedures . . . provide[d] to . . . any person alleging discrimination on the basis of disability in violation of any provision of . . . [the ADA] concerning employment." 42 U.S.C. § 12117. The ADA's retaliation section, in turn, declares that "remedies and procedures available under [S]ection[] 12117 . . . of [Title 42] shall be available to aggrieved persons for violations of [the prohibition on retaliation for filing a charge of discrimination in employment based on disability]." 42 U.S.C. § 12203(c). Similarly, the Rehabilitation Act indicates that "[t]he remedies, procedures, and rights set forth in . . . 42 U.S.C. [§] 2000e-5(f) through (k) . . . shall be available . . . ." 29 U.S.C. § 794a(a)(1).

Although the foregoing statutory provisions <u>permit</u> the appointment of counsel for plaintiffs pursuing employment discrimination and retaliation claims under Title VII, the ADA, and the Rehabilitation Act, "Title VII [and, by direct extension, ADA and Rehabilitation Act] litigants have no statutory <u>right</u> to

8

counsel." Anderson v. Potter, 149 F. App'x 175, 175 (4th Cir. 2005) (citing Jenkins v. Chemical Bank, 721 F.2d 876, 879 (2d Cir. 1983), and Young v. K-Mart Corp., 911 F. Supp. 210, 211 (E.D. Va. 1996)) (emphasis added); accord Castner v. Colorado Springs Cablevision, 979 F.2d 1417, 1420 (10th Cir. 1992) (citing Poindexter v. Federal Bureau of Investigation, 737 F.2d 1173, 1179 (D.C. Cir. 1984), and Ivey v. Board of Regents of Univ. of Alaska, 673 F.2d 266, 269 (9th Cir. 1982)); Gonzalez v. Carlin, 907 F.2d 573, 579 (5th Cir. 1990); Hunter v. Department of the Air Force Agency, 846 F.2d 1314, 1317 (11th Cir. 1988); Slaughter v. City of Maplewood, 731 F.2d 587, 590 (8th Cir. 1984); Tyson v. Pitt Cnty. Gov't, 919 F. Supp. 205, 206 (E.D.N.C. 1996); McIntyre v. Michelin Tire Corp., 464 F. Supp. 1005, 1008 (D.S.C. 1978); see also Melton v. Freeland, No. 1:96CV516, 1997 WL 1048768, at *2 (M.D.N.C. Apr. 8, 1997) (unpublished) (Tilley, J.) (addressing parallel attorney appointment authority as to ADA public accommodation claims). "To the contrary, the statutory language expressly leaves this decision to the discretion of the trial court." Poindexter, 737 F.2d at 1183; accord Anderson, 149 F. App'x at 175; Castner, 979 F.2d at 1420; Gonzalez, 907 F.2d at 579; Hunter, 846 F.2d at 1317; Slaughter, 731 F.2d at 590; Jenkins, 721 F.2d at 879; Ivey, 673 F.2d at 269; Melton, 1997 WL 1048768, at *2; Tyson, 919 F. Supp. at 206-07; Young, 911 F. Supp. at 211; McIntyre, 464 F. Supp. at 1008.

To help ensure proper exercise of that discretion, the "[f]actors [this] [C]ourt should consider when determining whether to appoint counsel are: (1) whether the [plaintiff] has the financial ability to retain counsel; (2) whether the [plaintiff] has made a diligent effort to retain counsel; (3) whether the [plaintiff] has a meritorious claim; and (4) whether the plaintiff is capable of representing herself." Melton, 1997 WL 1048768, at *2-3 (citing Tyson, 919 F. Supp. at 207, and Young, 911 F. Supp. at 211); accord Castner, 979 F.2d at 1420-21; Poindexter, 737 F.2d at 1185; Jenkins, 721 F.2d at 880; McIntyre, 464 F. Supp. at 1008.[5] The discussion which follows addresses each of those factors.

## 1. Financial Ability

"A litigant need not be destitute to qualify for appointed counsel under [Title VII]. Rather, the court should examine the plaintiff's ability to hire counsel and still meet his or her daily

---

[5]    The Fifth, Eighth, and Ninth Circuits' previously cited decisions did not identify the fourth above-listed factor concerning the plaintiff's ability to handle the case, see Gonzalez, 907 F.2d at 580; Slaughter, 731 F.2d at 590; Ivey, 673 F.2d at 269, and the Eleventh Circuit's above-cited decision did not directly reference the first above-listed factor regarding the plaintiff's ability to pay, see Hunter, 846 F.2d at 1317; however, more recently, district courts within those Circuits have addressed all four of the above-cited factors, see, e.g., Lampkin v. Texas Dep't of Pub. Safety, No. A12CV876SS, 2013 WL 264541, at *5 (W.D. Tex. Jan. 22, 2013) (unpublished); Maxwell v. Express Scripts, Inc., No. 4:11CV1315CDP, 2012 WL 996651, at *7 (E.D. Mo. Mar. 22, 2012) (unpublished); Winchester v. Yakima Cnty. Super. Ct., No. CV-10-3057-EFS, 2011 WL 133017, at *1 (E.D. Wash. Jan. 14, 2011) (unpublished); Donohoe v. Food Lion Stores, Inc., 253 F. Supp. 2d 1319, 1321 (N.D. Ga. 2003).

expenses." <u>Castner</u>, 979 F.2d at 1421-22 (internal citations omitted). The financial ability inquiry in the appointment of counsel context "is less stringent than that required for the general in forma pauperis statute, 28 U.S.C. § 1915(d)." <u>Id.</u> at 1422. The United States District Court for the District of Columbia granted Plaintiff's application to proceed <u>in forma pauperis</u>. (<u>See</u> Docket Entry dated June 22, 2009.) Under these circumstances, this factor weighs in favor of appointment of counsel. <u>See</u> <u>Edwards v. Senatobia Mun. Sch. Dist.</u>, No. 2:12CV39-MPM-JMV, 2012 WL 1989224, at *1 (N.D. Miss. June 4, 2012) (unpublished) ("Since the plaintiff has already met the heavier burden to proceed *in forma pauperis*, he has clearly met the need based requirement."); <u>Mell v. Human Dev. Cntr.</u>, No. 99 C 6714, 2000 WL 656650, at *1 (N.D. Ill. Mar. 23, 2000) (unpublished) ("The court previously granted plaintiff's petition to proceed *in forma pauperis*. Neither plaintiff nor defendant have indicated any change in plaintiff's financial condition. Therefore, the court finds that plaintiff is not financially able to retain a lawyer." (internal citation omitted)); <u>see also</u> <u>Mullarkey v. Kornitzer</u>, Civil Action No. 10-6637(CCC), 2012 WL 2401979, at *3 (D.N.J. June 25, 2012) (unpublished) (finding financial ability factor weighs in favor of appointing counsel where plaintiff qualified for <u>in forma pauperis</u> status).

11

## 2. Diligence of Effort

The instant Motion proffers that Plaintiff "has tried to secure counsel, but based on this being a federal case, attorney [sic] are requiring a retainers [sic] fee which at the present time [Plaintiff] is unable to afford . . . ." (Docket Entry 30 at 2.) It, however, provides no further details about Plaintiff's efforts. (See id.) In other words, "[t]hough Plaintiff has stated [s]he made efforts to employ counsel, [s]he has failed to specify even the number of contacts [s]he has made. The [proffer] provided by Plaintiff [is thus] insufficient for the Court to determine if [s]he has satisfied this factor." Donohoe v. Food Lion Stores, Inc., 253 F. Supp. 2d 1319, 1321 (N.D. Ga. 2003); see also Jenkins, 721 F.2d at 880 (indicating that plaintiff seeking appointment of counsel should identify "number of contacts with potential counsel"). Furthermore, because the statutes underlying Plaintiff's claims "authorize[] the Court to allow the prevailing party a reasonable attorney's fee, it appears that if her claim has merit then she might be able to obtain counsel on a contingency basis." Melton, 1997 WL 1048768, at *3; accord McIntyre, 464 F. Supp. at 1010; see also Edwards, 2012 WL 1989224, at *1 ("[M]any, if not most plaintiff's attorneys, will take cases based on contingency fees."). If, as Plaintiff alleges, the attorneys she has contacted have been unwilling to take her case without a retainer fee, that fact may suggest Plaintiff's case lacks merit.

12

However, given that Plaintiff has apparently made some effort to locate an attorney, the Court will treat this factor as neutral.

### 3. Merits of Claim(s)

Even where a plaintiff's "assertions could [] conceivably survive[] a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), they [can be] insufficient to warrant appointment of counsel." Ferrelli v. River Manor Health Care Ctr., 323 F.3d 196, 205 (2d Cir. 2003). As discussed in Section II.B. below with respect to Defendant's Motion to Dismiss, Plaintiff's claims in the instant case are <u>not</u> sufficient to survive a motion to dismiss. Furthermore, the Court notes that (as documented in Section I.) USPS rendered an adverse determination on Plaintiff's claims of disability discrimination. The agency's finding contrary to Plaintiff's position takes on even greater significance in this case, given her admission (detailed in Section II.A.2.) that multiple attorneys have declined to take her case on a contingency basis. See Rand v. Wolf Creek Nuclear Operating Corp., No. 11-4136-KHV-GLR, 2012 WL 1154509, at *4 (D. Kan. Apr. 5, 2012) (unpublished) ("[A]n adverse administrative finding coupled with many attorneys declining to represent the plaintiff, may 'provide strong evidence that [the] plaintiff's case lacks merit.'" (quoting Jones v. Pizza Hut, Inc., No. 10-CV-442-WYD-KMT, 2010 WL 1268048, at *2 (D. Colo. Mar. 30, 2010) (unpublished))); Brownlee v. American Elec. Power, No. 1:11CV97, 2011 WL 3163183, at *1 n.1

13

(N.D. Ind. July 26, 2011) (unpublished) ("[The plaintiff] has made several attempts to obtain counsel on her own; none, however, would apparently take the case. . . . [T]his is an indication that [her] case may indeed have little merit . . . [particularly given that] it received a no probable cause finding at the administrative level . . . ."). This factor thus weighs against appointment of counsel.

### 4. Capacity for Self-Representation

"Finally, [the] [C]ourt [will] consider [] [P]laintiff's ability to present the case adequately." Poindexter, 737 F.2d at 1188. In this regard, the Court "look[s] to the complexity of the legal issues and [P]laintiff's ability to gather and present crucial facts." Castner, 979 F.2d at 1422. As the summary in Section I. reflects, Plaintiff has gathered documents and presented recognizable claims for employment discrimination and retaliation. (See, e.g., Docket Entry 1-2 at 5-6.) Such claims generally proceed under well-established legal frameworks. See, e.g., Hoyle v. Freightliner, LLC, 650 F.3d 321, 331-38 (4th Cir. 2005). These circumstances counsel against appointment of counsel. See Williams v. Court Servs. & Offender Supervision Agency for D.C., 878 F. Supp. 2d 263, 267 (D.D.C. 2012) ("[T]here is no indication that [this] case is more complex than many of the straightforward actions filed in this court under Title VII, an area where the law is fairly settled. . . . Although the plaintiff's pleadings are not always perfectly clear, he has demonstrated an ability to

14

communicate with the court and to file appropriate motions. . . ."); Spell v. Maryland Human Relations Comm'n, Civil Action No. RDB-11-0803, 2011 WL 6000862, at *6 (D. Md. Nov. 28, 2011) (unpublished) (declining to appoint counsel under Section 2000e-5(f)(1) based on finding that the plaintiff's "pleadings adequately present his claims and the legal issues do not appear unduly complex"); Brownlee, 2011 WL 3163183, at *2 ("[T]he case is a relatively straightforward action under the [ADA]. [The plaintiff] claims that the [d]efendant failed to accommodate her disability and terminated her employment in retaliation . . . . [This] factor – the difficulty of her claims – cuts against [her] request for counsel . . . [as does the fact that she] has already adequately articulated her claims . . . ." (internal citations omitted)).

Regarding this factor, Plaintiff argues primarily that she cannot adequately represent herself because of her diagnosed carpal tunnel syndrome. (See Docket Entry 30 at 1 ("Plaintiff had tried to provide . . . the opposition statement but was unsuccessful, due to disability carpel [sic] tunnel 354.0 in right hand which continues to have pain and discomfort."), 2 ("(Affidavit evidence attached) of having a medical disability condition 354.0 carpel [sic] tunnel syndrome in the right and left hand. Also Doctors [sic] Glushakow ordered [sic] (attached doc) states no use of right hand wrist, continue to present date."), 12-13 (doctor's report indicating Plaintiff should not use her right hand and limit use of

15

left hand to four hours per day, five days per week).)[6] However, she does not indicate how this diagnosis prevents her from representing herself. (See id.) Presumably, based on the attached examination report, the condition limits Plaintiff's physical ability to write or type. However, other methods of composition exist by which Plaintiff could prepare filings. For example, Plaintiff could dictate to another person or use a program that converts spoken words into type. Plaintiff has failed to explain why she did not make use of such options or why she requires an attorney to perform clerical functions. This factor therefore weighs against appointment of counsel.

In sum, the record indicates that, although Plaintiff lacks the financial ability to hire counsel, she does not have a meritorious claim and she could represent herself. As a result, even viewing the question of whether Plaintiff diligently has attempted to hire an attorney as neutral, the balance of relevant factors weighs against her request for appointment of counsel. The Court therefore will deny her instant Motion.

---

[6] Dr. Glushakow's Examination Report is dated December 8, 2009, and is based on an examination conducted on November 20, 2009 (see Docket Entry 30 at 12), over six months prior to the date Plaintiff filed the instant Motion (see id. at 1). Her instant Motion thus lacks up-to-date medical documentation regarding her claimed condition.

16

## B. Motion to Dismiss

Defendant argues that "Plaintiff's Complaint should be dismissed because it contains insufficient factual allegations and fails to sufficiently notify Defendant as to what is at issue in the litigation, as required by Federal Rule of Civil Procedure 8(a) and Twombly." (Docket Entry 25 at 5.) Defendant further contends that Plaintiff has not alleged an adverse employment action with respect to the October 12, 2006 incident, which apparently underlies most of Plaintiff's claims. (Id. at 7-8.) The Court agrees.

Under Federal Rule of Civil Procedure 12(b)(6), a complaint falls short if it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (emphasis added) (internal citations omitted) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

"[D]etermining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule

17

12(b)(6) motion . . . requires the reviewing court to draw on its judicial experience and common sense." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009). Moreover, although the Supreme Court has reiterated the importance of affording pro se litigants the benefit of liberal construction, Erickson, 551 U.S. at 94, the United States Court of Appeals for the Fourth Circuit has "not read Erickson to undermine Twombly's requirement that a pleading contain more than labels and conclusions," Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted) (applying Twombly standard in dismissing pro se complaint); accord Atherton v. District of Columbia Off. of Mayor, 567 F.3d 672, 681–82 (D.C. Cir. 2009) ("A pro se complaint . . . 'must be held to less stringent standards than formal pleadings drafted by lawyers.' But even a pro se complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" (quoting Erickson, 551 U.S. at 94, and Iqbal, 556 U.S. at 679, respectively)), cert. denied, 130 S. Ct. 2064 (2010).

Liberally construing the Complaint and its attachments, Plaintiff has failed to state a claim. Plaintiff has not presented factual matter that would allow a reasonable fact-finder to infer a connection between the occurrences about which Plaintiff apparently complains (i.e., the incident on October 12, 2006, and Plaintiff's subsequent suspension and firing) and any discriminatory animus on the part of her employer, whether based on

18

race, color, gender, or disability. Plaintiff provides no facts to suggest that the supervisor acted out of bias based on any suspect classification. (See id. at 1-56.) Likewise, she does not offer any facts to suggest that USPS suspended and terminated her employment for reasons other than those stated - i.e., that she failed to inform USPS of a preexisting condition in her application for employment. (See id.)

Furthermore, as Defendant points out (see Docket Entry 25 at 7), the attachments to the Complaint focus on the incident on October 12, 2006 (see Docket Entry 1-2 at 6, 12-19, 34), and this incident appears to represent the sole matter considered in the agency's review process (see id. at 34). That alleged conduct does not rise to the level of an adverse action necessary to sustain a discrimination or retaliation claim. See Caldwell v. Johnson, 289 F. App'x 579, 587-92 (4th Cir. 2008) (holding that Title VII retaliation claims against federal employees require proof of "materially adverse action"); James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375 (4th Cir. 2004) ("Regardless of the route a plaintiff follows in proving a Title VII [discrimination] action, the existence of some adverse employment action is required." (internal citation omitted)); Moret v. Geren, 494 F. Supp. 2d 329, 344 (D. Md. 2007) (holding that, even under lower "materially adverse action" standard for retaliation claims (as opposed to higher "adverse employment action" standard applicable to

19

discrimination claims), supervisory official's "alleged rude and difficult treatment" of the plaintiff could not support a claim); see also Cain v. Locke, 483 F. App'x 276, 281 (7th Cir. 2012) ("[T]he fact that [the plaintiff's] supervisors may have been rude or intimidating does not elevate these incidents to the level of materially adverse actions.").[7]

Finally, Plaintiff provided as an attachment to her Complaint a letter documenting her placement in an off-duty, non-pay status because she "failed to disclose numerous prior injuries and/or pre-existing conditions on [her] application for employment." (Docket Entry 1-2 at 35.) Plaintiff does not deny that USPS suspended and then fired her based on this rationale, but instead argues (apparently in response to Defendant's reasoning) that Title 1 of the ADA "[p]rohibits employer to ask employee of any past pre existing conditions or [d]isability." (Docket Entry 1 at 1; see also Docket Entry 1-2 at 5.) The ADA provides that a covered employer "shall not conduct a medical examination or make inquiries of a job applicant as to whether such applicant is an individual with a disability or as to the nature or severity of such disability." 42 U.S.C. § 12112(d)(2)(A). However, the ADA also

---

[7] The ADA and the Rehabilitation Act generally require the same type of underlying harm to support discrimination and/or retaliation claims as apply under Title VII. See generally Rhoads v. Federal Deposit Ins. Corp., 257 F.3d 373, 391-92 (4th Cir. 2001); Rogers v. Department of Health & Envtl. Control, 174 F.3d 431, 433-34 (4th Cir. 1999).

provides an exception to this general rule: "A covered entity may make preemployment inquiries into the ability of an applicant to perform job-related functions." 42 U.S.C. § 12112(d)(2)(B). Plaintiff does not argue that USPS's inquiries concerning physical limitations and preexisting conditions are unrelated to job-related functions. (See Docket Entry 1 at 1-2; Docket Entry 1-2 at 1-56.)

In light of all these circumstances, Plaintiff's claims all fail as a matter of law.

### III.  Conclusion

Plaintiff does not qualify for appointment of counsel and her Complaint fails to state a claim.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Appoint Counsel (Docket Entry 30) is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss or, in the Alternative, for a More Definite Statement (Docket Entry 24) is **GRANTED** in that Plaintiff's Complaint is **DISMISSED**, pursuant to a contemporaneously filed Judgment.

/s/  L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

March 29, 2013